UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DIAKEL CLARKE,

                                Plaintiff,

       -against-

THE CITY OF NEW YORK,
P.C. JAMES O'NEILL,
SGT. GARY CALHOUN,
P.O. DAVID LONGARELLO,

                                Defendants.
-------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

Jury Trial

18 CV 7300 (ENV) (SJB)

Plaintiff DIAKEL CLARKE by and through his attorney, Vik Pawar, Esq. respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983, and 1988 for violations of his civil rights, as secured by statutes and the Constitution of the United States.

## JURISDICTION

2.      The action is brought pursuant to 42 U.S.C. §§ 1983, and 1988, and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

3.      Jurisdiction is found upon 28 U.S.C. §§1331 and 1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

## JURY DEMAND

5.    Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6.    Plaintiff is a citizen of the United States, and at all relevant times was a resident of the County of Queens, City and State of New York.

7.    Defendant City of New York is a municipal corporation duly established under the laws and constitution of the State of New York.

8.    Defendant O'Neill is the Police Commissioner of the NYPD, Defendants Calhoun, and Lonarello are/were officers from the 75th precinct and employed by the NYPD. They are all sued in their individual, official and supervisory capacities.

## FACTS

9.    On May 1, 2016, defendant Lonarello presented false testimony to a judge in order to obtain a search warrant at 2347 Pitkin Avenue, Brooklyn, New York ("subject premises").

10.   Lonarello without any reliable sources or informants falsely claimed that the subject premises is a known location where drugs are kept and or sold.

11.   Plaintiff was inside the subject premises to purchase candles to commemorate the death of his grandfather.

12.   Plaintiff was not the subject of the search warrant nor was plaintiff known to be a drug dealer or buyer.

13. While plaintiff was inside the subject premises, defendants Calhoun and Lonarello ("defendants") barged in.

14. Defendants proceeded to the basement and came up empty handed.

15. Undeterred, they placed plaintiff in handcuffs and accused him of various serious offenses.

16. Plaintiff had committed no crime.

17. Defendants arrested plaintiff without any probable cause and an arrest warrant.

18. Plaintiff was transported by the defendants to the 75th precinct.

19. Defendants strip searched plaintiff without any cause.

20. Plaintiff had a phone and $680 in his possession.

21. Defendants refused to give him a voucher stating "we don't give out vouchers. Everything is on the computer now."

22. Based on the false and serious nature of the criminal charges, plaintiff's bail was set high.

23. Plaintiff spent 3 nights before his mother was able to post bail.

24. Plaintiff was forced to appear in court 4-5 times before charges against him were dismissed and sealed.

## AS AND FOR THE FIRST CAUSE OF ACTION
(Unlawful Seizure, Unreasonable Search, Excessive Force, Malicious Prosecution under the 4th Amendment, Due Process Clause of the 14th Amendment)

25. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

26. Plaintiff was stopped, frisked, seized and falsely arrested without probable cause by the defendants. Plaintiff was innocently inside the subject premises shopping for candles. He was not dealing drugs, buying drugs or had possession of any drugs.

27. Plaintiff's rights to be free from excessive and unreasonable force were violated when he was grabbed by the defendants, taken to the 75th precinct and strip-searched by the defendants.

28. Plaintiff suffered humiliation from this incident because he was searched by defendants as he stood naked.

29. In addition, plaintiff's Substantive Due Process rights under the Fourteenth Amendment and post-arraignment seizure under the Fourth Amendment were violated when Lonarello initiated criminal proceedings against him without probable cause.

30. Lonarello gave false testimony to obtain a search warrant, drafted false criminal court complaint paperwork against plaintiff and falsely charged him with various crimes. This included making false memo-book entries, drafting a false arrest report which contained false facts of the baseless arrest charges, drafting a criminal court complaint that contained false allegations of illegal conduct which constituted the baseless charges, case-ready check-list, write-up for the DA's office and sworn affidavits.

31. The false NYPD official paperwork was then forwarded to the District Attorney's Office who continued the prosecution of plaintiff based on the false facts provided by Lonarello.

32. Lonarello swore in official NYPD paperwork that plaintiff's prosecution was justified even though he knew the contents of the paperwork to be false.

33. Lonarello was aware that there was no probable cause to arrest plaintiff let alone initiate criminal proceedings against him. Therefore, he acted with malice.

34. Lonarello failed to retract the false charges against plaintiff and prolonged plaintiff's post-arraignment seizure and prosecution. Lonarello's actions constituted malicious prosecution because he knowingly filed false and unsubstantiated charges against Plaintiff, failed to drop them, or inform the District Attorney's office of the falsity of the charges and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated. In addition, Lonarello failed to show up for court hearings and unnecessarily prolonged plaintiff's liberty and violated his rights to substantive due process. Plaintiff was forced to appear 4-5 times in court at the risk of having his bail revoked or face a bench warrant.

35. The criminal proceedings terminated in plaintiff's favor when the charges against him were dismissed.

36. As a result of the aforementioned conduct of all Defendants, Plaintiff's constitutional right to be free from this unlawful search and seizure and excessive force and being maliciously prosecuted were violated.

### AS AND FOR A SECOND CAUSE OF ACTION
(Denial of Right to Fair Trial)

37. Plaintiff repeats, reiterates, and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

38. Lonarello fabricated probable cause and detained and initiated criminal proceedings against plaintiff.

39. The false and fabricated charge denied plaintiff the right to a fair trial or a hearing at the arraignment and during repeated court appearances. Plaintiff was forced to

appear in Court because of the false charges and his failure to appear would have resulted in a warrant issued for his arrest.[1]

40. The false statements by Lonarello restricted plaintiff's freedom of movement because the false statements were forwarded to the District Attorney's Office which caused plaintiff to be prosecuted.

41. All charges against plaintiff were dismissed after he made 4-5 court mandated trips to the Court.

42. In addition, plaintiff risked losing his bail and his freedom restricted due to the falsified serious criminal charges against him.

43. But for the false charges, that snared plaintiff over a year since his seizure and post-seizure deprivation of liberty, plaintiff would not have endured numerous court appearances and suffer a deprivation of his rights under the Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution.

44. As a result of defendants' conduct, plaintiff suffered injuries resulting from this arrest and prosecution.

---

[1] It is not uncommon that NYPD officers to submit falsely sworn complaints arresting and prosecuting citizens without probable cause and then committing perjury and/or manufacturing evidence in an effort to initiate criminal prosecutions against individuals like plaintiff. *See Colon v. City of N.Y.*, No. 09 Civ. 8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) ("Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration ... there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.").

## AS AND FOR A THIRD CAUSE OF ACTION
(Takings-Property Interest)

45. Plaintiff repeats, reiterates, and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

46. Defendants took money and property that belonged to plaintiff.

47. Defendants deprived plaintiff of his property interests without due process.

48. Defendants violated plaintiff's property interests without due process under the law and as a result he suffered injuries.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Excessive Bail)

49. Plaintiff repeats, reiterates, and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

50. Lonarello fabricated criminal charges against plaintiff.

51. Lonarello falsely raised the seriousness of the charges and as a result plaintiff's bail was set at a high amount.

52. As a result of defendants' conduct plaintiff's right to be free from excessive and Unreasonable bail was violated.

## AS AND FOR A FIFTH CAUSE OF ACTION
(*Monell* claim)

53. Plaintiff repeats, reiterates, and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

54. The City through the NYPD has been deliberately indifferent to the rights of its citizens and although they could have, they fail to address the problem as outlined below which in turn leads to the violations of individuals like plaintiff's constitutional rights.

55. In addition, it is not uncommon that NYPD officers to submit falsely sworn

complaints arresting and prosecuting citizens without probable cause and then committing perjury and/or manufacturing evidence in an effort to initiate criminal prosecutions against individuals like plaintiff. *See Colon v. City of N.Y.*, No. 09 Civ. 8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) ("Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration ... there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.").

56. The City through the NYPD is aware that an officer would encounter a situation where he/she has to appear in Court to either substantiate their previous false statements or continue to disregard "must appears[2]" so that criminal prosecutions are either prolonged or eventually dismissed. The officer faces a difficult choice to further perjure him/herself and violate his/her oath to uphold the law or simply "disappear" from the criminal proceedings against individuals like plaintiff. Either of these difficult choices lead to the violation of constitutional rights and thus causing injuries to individuals like plaintiff.

56. Despite being aware of the difficult choices faced by the NYPD officers, the NYPD has failed to enact policies or implement safeguards for these officers who may very well may have made the arrest to reach a "quota" and do not wish innocent individuals to go to jail and refuse to appear in Court. Alternatively, the NYPD lacks a policy in ensuring that individual officers follow-up for court appearances for the criminal charges

---

[2] "Must appears" are notifications to arresting/prosecuting officer's command that they must appear at the Criminal Court to be ready for trial or hearing to support the claims made in the arrest and criminal prosecuting documents.

they have filed against individuals like plaintiff to ensure that plaintiff and others like him do not have to repeatedly come to court and have the case either adjourned or dismissed because the individual officers fail to follow up on their "criminal court complaint."

57. These deliberate indifference acts by the City through the NYPD and the existence of policy and custom and practice that leads to violation of constitutional rights of plaintiffs and is the proximate cause of injuries suffered by plaintiff as outlined throughout this complaint.

58. Plaintiff alleges a second separate and apart aspect of *Monell* in this lawsuit.

59. Defendant O'Neill is the Police Commissioner of the NYPD and defendant City and who is in charge of training and supervising his subordinates. They are both referenced interchangeably as "O'Neill" or "City" in the following paragraphs.

60. O'Neill is in charge of training police officers on the legal basis to obtain a search warrant.

61. O'Neill is in charge of supervising police officers when they obtain and execute the search warrants.

62. The NYPD's Patrol Guide, which spans thousands of pages detailing hundreds of police procedures, -including- search warrants execution- yet does not contain a statement or guideline that the Fourth Amendment prohibits warrantless arrests or arrest without a probable cause of innocent individuals who happen to be in a public establishment during the execution of a search warrant. O'Neill is fully familiar with what the Patrol Guide contains and does not contain and should contain.

63. These problems, while obvious to O'Neill and the City, were made clear in *McClary v. City of New York et al.*, No. 12-cv-1 18 (E.D.N.Y.). In that case, then-Chief Judge Carol Bagley Amon permitted the plaintiff to add a *Monell* claim based on the City's

failure to train its officers in the constitutional limit on damage during search warrant execution.

64. The evidence adduced in the *McClary* case, which was presented to Judge Amon in support of the plaintiff's motion for leave to amend, included:

    a. Sgt. Sonia Christian's testimony that she had received no training during or after the Police Academy on how to conduct a search of a house, but had been instructed that officers are allowed to search anywhere an object of the search may physically be located.

    b. Officer Matthew Vorraro's testimony that he did not remember receiving any training at the Police Academy on how to search a house or any training at anytime on minimizing or how to minimize damage while executing a search warrant.

    c. Officer Mark Kipybida's testimony that he did not receive any training at the Police Academy on how to execute a search warrant; nor did he receive any training about minimizing damage during the execution of a search warrant.

    d. Lt. Andrew Hepworth's testimony that in his twenty-four years as an NYPD officer, the only training he could recall receiving on executing a search warrant was after he was promoted to sergeant, and that the training was only given to "certain supervisors." He did not testify that the training covered the issue of limiting damage during the execution of the search.

    e. Officer Gregory Michels's testimony that he did not receive any training at the Police Academy in how to execute a search warrant, did not receive any training at the Police Academy on minimizing damage during the execution of a search warrant, and did not receive any training after graduating from the Academy on how to execute a search warrant.

  f. Captain Craig Adelman's testimony that he was not aware of any guidelines, instructions, or training that explained that property damage should be minimized during the execution of search warrants.

  g. Officer Ronald Schmidt's testimony that he did not receive any training on how to execute a search warrant.

  h. O'Neill is aware of these instances of lack of training but has not done anything to implement a training program based on arrest of innocent individuals during execution of search warrant or to minimize damage when a search warrant is executing resulting in the constitutional deprivations of individuals such as plaintiff.

  65. Additional evidence adduced in the *McClary* case demonstrated that NYPD officers are not properly trained, supervised, or disciplined regarding the limitation on damage during the execution of search warrants. O'Neill is aware of this and yet has failed to implement adequate training/supervision/disciplinary measures.

  66. On September 24, 2013, NYPD Chief John Essig testified in a deposition on behalf of the City of New York pursuant to Fed. R. Civ. P. 30(b)(6) regarding the NYPD's policies on how officers are instructed to execute search warrants.

  67. Chief Essig testified to the following facts:

  a. he knew of no Patrol Guide provision or training materials that explained the constitutional standard that only reasonable damage was permitted during search warrant execution;

  b. he did not believe there is a limitation on damage that is permissible in the execution of a search;

  c. the only training materials addressing the execution of search warrants that are provided to police officers describe what officers can look for and where they can look, but do not provide an explanation on how the search should be carried out;

  d. in the training materials he had reviewed to prepare for his deposition, he found no discussion about the limitation on damage that is acceptable during the execution of a search warrant;

  e. there are no materials given to new recruits at the Police Academy and no classroom instruction provided to new recruits that explain there are limitations on damage that can be caused during the execution of a search warrant;

  f. there is no training provided at the Academy for new recruits on the manner of executing search warrants;

  g. there is no classroom training for new supervisors about the manner in which search warrants should be executed;

  h. he had seen no lesson plans for instruction, either for recruits or supervisors, about the manner in which search warrants should be executed;

  i. officers are trained that they can look anywhere they thought a piece of evidence could be, which included looking inside a couch; and

  j. he was not aware of any officer who had been disciplined for problems during the execution of a search warrant.

  68. Upon information and belief, following the *McClary* case, and before the execution of the search warrant at the subject premises, O'Neill through the NYPD did not amend the Patrol Guide to include a statement or guideline about the constitutional limitation on unnecessary collateral damage (such as arrest of an innocent individual such as the plaintiff) during the execution of search warrants in public places.

69. Upon information and belief, following the *McClary* case, and before the search of the Plaintiffs' apartment, neither the City nor O'Neill implemented policies to ensure that NYPD officers are adequately trained or supervised so that innocent individuals such as the plaintiff are not otherwise subject to arrests.

70. Despite the obvious need to do so, the City has failed to train its police officers that the Constitution prohibits excessive or unnecessary collateral damage 9such as arrest of plaintiff) in the execution of a search warrant.

71. O'Neill and the City have known that NYPD officers routinely cause excessive or unnecessary constitutional injuries to innocent individuals in the execution of a search warrant.

72. O'Neill and the City have known that NYPD officers do not understand the constitutional limitations on arrests without probable cause or arrest warrants or arrests of otherwise innocent individuals inside a public place that is subject of a search warrant. unnecessary property damage in the execution of a search.

73. In the face of this continuing problem, O'Neill and the City have remained indifferent and failed to adequately train, supervise, and discipline NYPD officers to ensure that they do not cause excessive or unnecessary property damage in the execution of a search.

74. The damage to the Plaintiff's constitutional rights is of the kind seen in the *McClary* case and other cases where NYPD officers have caused unnecessary damage and or arrested innocent individuals during the execution of a search warrant.

75. The City's deliberate indifference was the moving force of the unconstitutional damage complained of herein.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages as determined by a jury:

(B) punitive damages in an amount to be determined by a jury;

(C) reasonable attorney's fees and the costs, expenses and disbursements of this action;

(D) direct the NYPD to implement guidelines regarding innocent individuals arrested in public during execution of a search warrant; and

(D) such other and further relief as appears just and proper.

Dated: New York, New York
April 16, 2019

                                          PAWAR LAW GROUP, P.C.
                                          20 Vesey Street, Suite 1210
                                          New York, New York 10007
                                          (212) 571-0805

By: _____
                                          Vik Pawar (VP9101)
                                          *Attorney for Plaintiff*